UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| KELVIN ANDRE SPOTTS, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Civil Action No. 08-0044 |
| ) | (CKK) |
| THE UNITED STATES OF AMERICA, ) | |
| ) | |
| Defendant. ) | |

**DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO TRANSFER**

Defendant United States of America, by and through undersigned counsel, hereby responds to Plaintiffs' Opposition to Defendant's motion to transfer the case to its proper venue, the Eastern District of Texas.

Plaintiffs oppose the transfer of this case to its natural setting, Beaumont, Texas. Their effort to oppose the transfer of this case is based on inaccurate facts, hearsay evidence, and conveniently omitted law.

**BACKGROUND**

Plaintiffs in this case are, or were, 438 prisoners incarcerated at the Federal Correctional Institution in Beaumont, Texas. See Second Amended Complaint at ¶ 2. On February 2, 2008, Plaintiffs filed their original Complaint. In that Complaint, and in Plaintiffs' Second Amended Complaint, Plaintiffs sued the United States (and, apparently, the Bureau of Prisons as well). Second Amended Complaint at ¶ 2. Plaintiffs allege that their case is brought exclusively under the Federal Tort Claims Act ("FTCA"). Second Amended Complaint at ¶¶ 1, 3.

Plaintiffs claim that from September 24 through October 25, 2005, they were forced to live in substandard conditions at their prison in Beaumont, Texas, due to the aftereffects of Hurricane Rita. That is the gravamen of Plaintiffs' Complaint. Plaintiffs allege that the conditions in the prison in Beaumont in the days after Hurricane Rita caused them to experience post-traumatic stress disorder; incur various physical ailments; increased their risk of certain negative long-term health effects; and even resulted in the wrongful death of two inmates. All of the relevant actions complained of occurred in Beaumont, Texas. Defendant moved to have this case transferred to the Eastern District of Texas.

**ARGUMENT**

I.   Standard of Review

The Court has "broad discretion under Section 1404 to consider a transfer of venue to a district where an action might have been more properly brought." Badoush v. Holiday Inn Boston-Brookline et al., 2008 U.S. Dist. LEXIS 23819, *2 (D. N.J. 2008) citing Jumara v. State Farm Ins. Co., 55 F.3d 873, 875, 877 n.3, 883 (3d Cir. 1995).

In considering a motion to transfer for improper venue under Fed. R. Civ. P. 12(b)(3), the Court must accept the plaintiff's "well-pled factual allegations regarding venue as true, draw all

reasonable inferences from those allegations in the plaintiff's favor, and resolve any factual conflicts in plaintiff's favor." Quarles v. Gen. Inv. & Dev. Co., 260 F. Supp. 2d 1, 8 (D.D.C. 2003). "Because it is the plaintiff's obligation to institute the action in a permissible forum, the plaintiff usually bears the burden of establishing that venue is proper." Freeman v. Fallin, 254 F. Supp. 2d 52, 56 (D.D.C. 2003). "If the Court concludes that venue is improper, it must either dismiss the action or 'if it be in the interest of justice, transfer it to any district or division in which it could have been brought.'" Sheppard v. U.S., 2007 U.S. Dist. LEXIS 27044 (D.D.C. 2007) citing 28 U.S.C. 1406(a). Moreover, "[t]he decision whether to dismiss or transfer is committed to the 'sound discretion' of the Court." Id. citing Naartex Consulting Corp. v. Watt, 232 U.S. App. D.C. 293 (D.C. Cir. 1983).

II.     Venue Is Not Proper In Washington, D.C. Pursuant To The Federal Tort Claims Act

Plaintiffs do not contest that under the Federal Tort Claims Act, 28 U.S.C. § 1402(b), venue for any claims brought under the Act lies *only* in the judicial district where the plaintiff resides or where the cause of action arose. The section states that:

> Any civil action on a tort claim against the United States...may be prosecuted *only* in the judicial district where the plaintiff resides or wherein the act or omission complained of occurred. (Emphasis added).

28 U.S.C. § 1402(b). For venue purposes, a federal inmate's residence is his current place of confinement, regardless of whether or not he considers it "home" or not. See In re Pope, 580 F.2d 620, 622 (D.C. Cir. 1978); also see Plaintiffs Opposition at p. 16 (claiming that "none of these Plaintiffs would regard Beaumont as *home*."). Plaintiffs also admit that none of the 438 currently reside in Washington, D.C. Instead, they admit that more than half of them still reside in Beaumont, Texas. Plaintiffs' Opposition at p. 14.

Plaintiffs try to avoid transfer, however, by going to great lengths to claim that Washington, D.C. is the venue in which acts or omissions complained of occurred in this case. Plaintiffs fail to read their own Complaint. Any lucid and objective reading of the Second Amended Complaint ("Complaint") leaves the reader with one overriding impression – the operative facts in this case arose in Beaumont, Texas.

Plaintiffs' Complaint has a section entitled "Allegations Common to All Claims." Second Amended Complaint, starting at ¶ 15. That section outlines the myriad acts and omissions that allegedly occurred in Beaumont. All of these allegations, and others, will have to be verified in Beaumont as part of the litigation process. Some of the many alleged key occurrences in Beaumont include:

- The force with which Hurricane Rita hit the prison in Beaumont;
- Hurricane Rita's knocking out electrical power of more than three-quarters of a million Texans;
- Beaumont's experiencing a heat wave after Hurricane Rita;
- Plaintiff Spotts and others approaching the Warden to discuss being moved due to the hurricane and the Warden's silence on the issue;
- the presence of alternative jails in Texas that Plaintiffs may have been moved to;
- Plaintiffs' being told to fill a trash bag with water;
- Plaintiffs' being given trash bags with holes in them;
- Plaintiffs' not having potable water;
- the heat that Plaintiffs claim gripped the prison in the aftermath of the hurricane;
- the lack of oxygen in the prison;
- the denial of food at the prison;
- the non-functioning plumbing at the prison;
- the lack of sleep for the Plaintiffs in the prison;
- the denial of clean clothes to the Plaintiffs in the prison;
- the denial of medicine to the Plaintiffs in the prison;
- the presence of microtoxins in the prison;
- the lockdown in the prison that continued despite the hurricane's passing;
- the Plaintiffs that died in the prison; and
- the Plaintiffs that experienced emotional distress in the prison.

All of these alleged occurrences happened – as Plaintiffs allege – in Beaumont. Yet, stoically, Plaintiffs contend that the decision to leave the prison open was made in Washington,

D.C., making venue proper in this district. Defendant responds to this argument in two ways: 1) the decision to keep the prisoners of Beaumont Penitentiary in Beaumont was *not* made in Washington, D.C.; and 2) even if the decision had been made in Washington, D.C., that is not enough to keep this case in this district.

First, the decision to keep the prisoners of Beaumont Penitentiary in Beaumont was not made in Washington, D.C. See Declaration of Linda R. Thomas at ¶ 4. Instead, the decision was made by the Regional Director in Dallas, Texas, at the time. Id. at ¶ 5. Without giving the Court the different mileages between Beaumont and Dallas and Beaumont and Washington, D.C., Defendant represents that Dallas is much closer to Beaumont than is Washington, D.C. Plaintiffs' use of newspaper articles, which are hearsay, as evidence that the decision to keep the prisoners in Beaumont was made in Washington, D.C. is therefore unfounded and factually incorrect.

Second, even if the decision to keep the Plaintiffs in Beaumont was made in Washington, D.C. – and it wasn't – that is not enough to make Washington, D.C. the proper venue for this particular case. "Courts in this circuit must examine the challenges to personal jurisdiction and venue carefully to guard against the danger that a plaintiff might manufacture venue in the District of Columbia." Cameron v. Thornburg, 983 F.2d 253, 256 (D.C. Cir. 1993). The headquarters of a government agency may be said to have the ultimate decision on any action taken by that agency. But this is not enough to grant venue in the district in which the agency is headquartered. In this case, there must be more than BOP headquarters' tangential "involvement" for venue to be proper in this district. "[V]enue is not appropriate in the District of Columbia where 'the only real connection the lawsuit has to the District of Columbia is that a federal agency headquartered here is charged with generally regulating and overseeing the administrative process.'" Shawnee Tribe v. United States of America, 298 F. Supp. 2d 21, 26 (D.D.C. 2002).

Moreover, "mere involvement on the part of federal agencies, or some federal officials who are located in Washington, D.C. is not determinative" of venue. Shawnee, 298 F. Supp. 2d at 25-26. Also see Poullard v. Federal Bureau of Prisons, 535 F. Supp. 2d 146,149 (D.D.C. 2008) (transferring the case to the Eastern District of Texas because, just as here, a "substantial part of the events or omissions giving rise to plaintiff's claims occurred at FCI Beaumont where plaintiff is currently incarcerated."). Thus, Plaintiffs' case should be transferred to the District Court that is closest to the operative facts of the case.

III.     Venue Is More Convenient In The Eastern District Of Texas

Pursuant to 28 U.S.C. §1404(a), a district court may transfer any civil action to any other district or division where it may have been brought. Importantly, Plaintiffs do not contest that this case could have been brought in the Eastern District of Texas. Looking at the factors a court must analyze when deciding a motion to transfer, it is clear that despite Plaintiffs' assertions to the contrary, this case belongs in Texas.

A.     Plaintiffs' choice of forum

Plaintiffs claim that their choice of forum deserves great weight because the decision to leave the Plaintiffs in their Beaumont prison was made in Washington, D.C. It bears repeating that Plaintiffs are factually incorrect on this issue. See Declaration of Linda R. Thomas at ¶ 4. Accordingly, this case is similar to other cases in which courts have found that the interests favor transfer because the "primary issue in th[e] case" concerns a decision made by an agency's local outpost as opposed to its headquarters. Southern Utah Wilderness Alliance v. Norton, 315 F. Supp.2d 82, 87 (D.D.C. 2005); see, e.g., Shawnee Tribe, 298 F. Supp.2d at 24 (transferring and noting that the Government's field offices were "actively involved" in decision at issue and the decision-making process was not "substantially focused" in Washington, D.C.); Sierra Club v.

Flowers, 276 F.Supp. 62, 67 68 (D.D.C. 2003) (transferring case because federal officials in Florida made the relevant decision and officials in Washington, D.C. were not involved in the decision making process); Airport Working Group of Orange County, Inc. v. United States Dep't of Defense, 226 F. Supp.2d 227, 230-31 (D.D.C. 2002) (transferring because connection to D.C. was "attenuated" where D.C. officials were not actively involved in challenged decision).[1]

    B.    Defendant's choice of forum

Despite its being a factor for the Court to consider, Plaintiffs do not address the issue of Defendant's choice of forum in their brief. Defendant has legitimate reasons for seeking transfer. The Eastern District of Texas is where most of the Plaintiffs reside and is the jurisdiction that is home to the federal prison in Beaumont. The fact remains that the prison is there, most of the Plaintiffs are there, nearly all of the relevant witnesses are there, and the sources of proof are there.

    C.    Convenience of the Parties

As Defendant noted in its motion to transfer, the convenience of the parties is a relevant factor in determining whether or not the Court should transfer this case. Counsel for Plaintiffs states that Washington, D.C., is closer to him in Canton, Ohio, than Beaumont is. He even goes so far as to give the distances that the two districts are from him in terms of miles. Counsel misses the law on the issue, which clearly holds that "'the convenience of counsel is not a factor that is relevant in deciding a motion brought under 28 U.S.C. § 1404(a).'" Coppola, et al. v. Ferrellgas, Inc, et al., 2008 U.S. Dist. LEXIS 17246, *12 (E.D. Pa. 2008) citing Matt v. Baxter Healthcare Corp., 74 F.Supp.2d 467, 469 (E.D. Pa. 1999); also see Badoush, 2008 U.S. Dist.

---

[1] Plaintiffs do not address these cases, which were cited in Defendant's motion to transfer, at all.

LEXIS 23819, *4 ("the convenience of counsel is not a consideration as to the issue of proper venue"). Counsel for Plaintiffs also completely ignores the inconvenience to the Defendant, who will have to make substantial accommodations if the Plaintiffs are allowed to pursue this case in this district. As such, Defendant contends that the balance of conveniences to the parties in this case tips strongly in favor of transferring this case to the Eastern District of Texas.

   D.   Convenience of the Witnesses

Plaintiffs discuss the location of their expert witnesses as evidence that this case should not be transferred to the Eastern District of Texas. But this case has just been filed – discovery is not even on the radar yet. Certainly no expert disclosures have been made. Nonetheless, Plaintiffs argue that transferring this case to the Eastern District of Texas would be unfair to them because their alleged experts are from Cleveland, Ohio, and Marietta, Georgia. Again, Plaintiffs miss the mark, legally speaking, because it is well-established law that for purposes of transfers, the convenience of "expert witnesses or witnesses who are retained by a party to testify carry little weight because they 'are usually selected because of their reputation and special knowledge without regard to their residences and are presumably well compensated for their attendance, labor, and inconvenience, if any.'" Coppola, 2008 U.S. Dist. LEXIS 17246, *12 (E.D. Pa. 2008) citing Webster-Chicago Corp. v. Minneapolis-Honeywell Regulator Co., 99 F.Supp. 503, 505 (D. Del. 1951); also see Howell v. Shaw Indus., 1993 WL 387901, *5 (E.D. Pa. 1993) (stating that "the convenience of expert witnesses is generally given little weight in a motion to transfer venue.").

Plaintiffs further argue that the inmate witnesses would not be inconvenienced because "Plaintiffs plan to do video tape recordings of depositions." Plaintiffs' Opposition at p. 16. This statement is curious for two reasons: 1) first, the more than four hundred Plaintiffs finally

acknowledge that they *are* witnesses in this case; and 2) Plaintiffs plan to depose themselves? It is much more likely that Defendant will notice and take the depositions of Plaintiffs. Transporting more than 400 Plaintiffs into this judicial district is simply unmanageable. Plaintiffs, in their very next sentence, admit that "[t]he cost of transporting a penitentiary inmate is prohibitively expensive." The law agrees with Plaintiffs: "[g]iven the likelihood that witnesses and relevant evidence are maintained at FCI Beaumont, and given the difficulty of transferring an incarcerated plaintiff[2] for purposes of pursuing litigation, the Court concludes that transfer of this action to the United States District Court for the Eastern District of Texas is both convenient for the parties and in the interest of justice." Poullard, 535 F. Supp. 2d at 149.

Plaintiffs would be slightly inconvenienced if their case were based in Beaumont and they would have to come to Washington, D.C., to depose a very small number of higher-level BOP officials. The convenience of the witnesses in this case – mainly Plaintiffs themselves – strongly favors the transfer of this case to Beaumont, where more than half of the Plaintiffs reside.[3]

E.   Interests of Justice

In their Opposition, Plaintiffs claim that the interests of justice favor the keeping of this case in this district. For support of their position, Plaintiffs claim that the law of the District of

---

[2] This case does not involve the transferring of a single incarcerated plaintiff, but rather the transferring of 438 plaintiffs. The difficulty of transferring 438 incarcerated plaintiffs is unfathomable.

[3] Plaintiffs also contend that there is "no evidentiary value attach[ed] to the place," in this case, the place being the prison itself. Plaintiffs' Opposition at p. 16. In their opposition, Plaintiffs accused undersigned counsel of making "legal conclusion[s] posing as a factual allegation." Id. at p. 13. To claim that there is no evidentiary value at the prison itself in this case is a perfect example of Plaintiffs' making a factual allegation into a legal conclusion. Because virtually all of the allegations in this case occurred in the prison itself, the layout and the condition of the prison will be of vital importance in this case.

Columbia will govern.  "Interpreting District of Columbia law," they write, "in the Eastern District of Texas will be less convenient than here."  Plaintiffs' Opposition at p. 16.  Plaintiffs display a fundamental lack of understanding of their own case.  Plaintiffs brought this case under the Federal Tort Claims Act.  As a federal district court, the court in the Eastern District of Texas is just as capable of handling the legal issues of Plaintiffs' case as is this Court.

Plaintiffs then summarily conclude that the more than 600 cases pending in this district than in the Eastern District of Texas is "inconsequential."  Plaintiffs' Opposition at p. 16.  Defendant respectfully submits that the Court can be the judge of that.

Finally, Plaintiffs show that Beaumont is a town whose residents rely on the prisons there for employment and is a vital part of their local economy.  "If the business of housing inmates were consolidated instead of being splintered among private, State and Federal governments, operating prisons would be the City of Beaumont's number one employer."  Plaintiffs' Opposition at p. 17.  Plaintiffs then use another hearsay quote – with no citation this time – to prove that "Beaumont is a very inhospitable place for inmates."  Id.  Defendant responds two ways.  First, Beaumont's economic reliance on the prison population there could just as easily lead to Beaumont's being a sympathetic venue as opposed to an inhospitable one.  Second, of course Beaumont is a tough place for prisoners – they are in prison!  Where Plaintiffs' argument falters most is that they fail to show any evidence that Beaumont is an inhospitable place for inmate *plaintiffs*.  In fact, because Plaintiffs bring this case pursuant to the FTCA, the judge will decide this case, not a jury of Beaumont residents.

As such, the local interests almost always favor the transferring of a case to the district in which the dispute arose because of the natural inclination to have local problems resolved locally.  Abusadeh v. Chertoff, 2007 WL 2111036 (transferee court had a "superior interest in addressing

10

the instant controversy because 'there is a local interest in having localized controversies decided at home.'" Id. at *8.  This case presents no reason why venue should be anywhere else but the Eastern District of Texas.

## **CONCLUSION**

Because venue is statutorily improper in this case under the FTCA, the Court should transfer Plaintiffs' case to the jurisdiction in which the actions that gave rise to Plaintiffs' claims occurred.  Even if the Court finds that venue is permissible in Washington, D.C., under the FTCA, the Court nonetheless should transfer this case to its natural setting – the Eastern District of Texas.

Dated: May 8, 2008.

                        Respectfully submitted,

                        /s/
                        JEFFREY A. TAYLOR D.C. BAR # 498610
                        United States Attorney

                        /s/
                        RUDOLPH CONTRERAS, D.C. BAR #434122
                        Assistant United States Attorney

                        /s/
                        CHRISTIAN A. NATIELLO, D.C. BAR # 473960
                        Assistant United States Attorney
                        Civil Division
                        555 4th Street, N.W.
                        Room E4112
                        Washington, D.C.  20530
                        (202) 307-0338

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| KELVIN ANDRE SPOTTS, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Civil Action No. 08-0044 |
| ) | (CKK) |
| THE UNITED STATES OF AMERICA, ) | |
| ) | |
| Defendant. ) | |

**ORDER**

IN CONSIDERATION of Defendant's Motion To Transfer The Case To The Eastern District Of Texas,

It is hereby ORDERED on this ___ day of _____ that Defendant's motion is hereby GRANTED.

The case will be transferred to the Eastern District of Texas, where venue is proper.


_____
The Honorable Colleen Kollar-Kotelly
United States District Court Judge

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

KELVIN ANDRE SPOTTS, ET AL., )
)
Plaintiffs, )
)
v. ) Civil Action No. 1:08-cv-44 (CKK)
)
UNITED STATES AMERICA )
Defendant. )
_____)

DECLARATION OF LINDA R. THOMAS

I, Linda Thomas, hereby declare and state the following:

1. I am currently employed by the Federal Bureau of Prisons (BOP) as the Administrator of the Correctional Services Branch. My business office is located at the Central Office in Washington, D.C.

2. As Administrator of the Correctional Services Branch, I am responsible for the safe, humane care and custody of federal inmates in BOP facilities, including institution security; prisoner transportation; keys, locks, and armory operations; emergency preparedness; inmate discipline, and specialized staff training. My branch also maintains records of all significant incidents both inmate and non-inmate related.

3. The statements in this declaration are based upon my personal knowledge, belief and experience, and upon information made available to me in the course of my official duties as Administrator of the BOP's Correctional Services Branch.

4. The decision to keep the prisoners in their Beaumont facility before and during Hurricane Rita was not made in Washington, D.C.

5. The decision to keep the prisoners in their lawful prison was made, as it typically is, by the Regional Director in Dallas, Texas.

In accordance with 28 U.S.C. §1746, I hereby declare under penalty of perjury that the foregoing is true and correct.

Dated May 6, 2008

*Linda R. Thomas*
Linda R. Thomas
Administrator
Correctional Services Branch
Federal Bureau of Prisons